UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| DINO N. THEODORE and ) | |
| ACCESS WITH SUCCESS, INC., ) | |
| Plaintiffs ) | CASE NO.: 18CV368 |
| ) | |
| v. ) | |
| ) | |
| 99 RESTAURANTS, LLC, ) | |
| DOUBLE 9 PROPERTY III, LLC and ) | |
| 99 REMAINDER III, LLC, ) | |
| Defendants ) | |

## COMPLAINT

The plaintiffs bring this action to enforce Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12182(b)(2), against the defendants, 99 Restaurants, LLC ("99 RESTAURANTS"), Double 9 Property III, LLC, ("DOUBLE 9") and 99 Remainder III, LLC ("99 REMAINDER"). The plaintiffs, Dino N. Theodore and Access with Success, Inc. ("AWS") allege that the defendants have violated Title III of the ADA. The plaintiffs seek an Order in the form of a Consent Decree, which will require the defendants to remove architectural barriers to wheelchair users and other mobility-impaired persons and to alter their policies and procedures in order to provide disabled persons equal access to their public accommodation, a restaurant known as "99 Restaurant & Pub," located at 149 South Broadway, Salem, New Hampshire, in accordance with the Americans with Disabilities Act and Subparts E and C, respectively, of 28 C.F.R. Part 36 and the *2010 ADA Standards for Accessible Design* (referred to specifically by their three-digit number herein as "ADA Standard" or as "Standard").

## PARTIES AND BACKGROUND FACTS

1.  The plaintiff, Dino N. Theodore, age 58, is paralyzed from the chest down and uses a manual wheelchair for ambulation. He drives a car equipped with hand controls.

2.  Mr. Theodore resides at 1305 Methuen Street, in Dracut, Massachusetts. He is an

attorney employed by the Department of Industrial Accidents in Massachusetts. He has been admitted to the practice of law in Massachusetts since 1993.

3. Mr. Theodore is a qualified individual with disabilities within the meaning of all applicable statutes, including the ADA, and is disabled within the meaning of the ADA in that he is substantially limited in performing one or more major life activities, including but not limited to walking and standing.

4. The plaintiff, AWS, is a non-profit corporation organized and existing under the laws of the Commonwealth of Massachusetts. Its members are able-bodied individuals and qualified individuals with disabilities as defined by the ADA.

5. The individually named plaintiff, Dino N. Theodore, is a member and a director of AWS. Members of AWS are predominantly qualified individuals with disabilities within the meaning of the ADA and all other applicable federal and state statutes.

6. AWS is a civil rights group organized for charitable and educational purposes by individuals with disabilities to advocate for the integration into society of disabled persons and equal access to all services, activities, programs, resources and facilities available to non-disabled persons. Its members are predominantly, but not exclusively, individuals with various physical disabilities impairing mobility, speech, vision, and hearing. One of the primary purposes of AWS is to assure that private places of public accommodation are accessible to, and usable by, persons with disabilities. AWS seeks to send a clear message that segregated services and inaccessible public accommodations are against the law and should not be tolerated.

7. Title III of the ADA permits private individuals to bring lawsuits in which they can obtain court orders to stop discrimination on the basis of disability.

8. AWS and its members have suffered direct and indirect injury as a result of the

defendants' actions or inactions as described herein. AWS also has been discriminated against because of its association with Dino Theodore and his claims. The defendants' failure to comply with the ADA adversely affects the organizational purpose of AWS.

9.     The defendant, 99 RESTAURANT, is a foreign limited liability company registered to do business in the State of New Hampshire with its principal office address at 3038 Sidco Drive, Nashville, TN 37204 and its Registered Agent in New Hampshire at CT Corporation System, 9 Capitol Street, Concord, NH 03301.

10.    99 RESTAURANT owns and operates a restaurant and pub at 149 South Broadway, Salem and is licensed to serve alcoholic beverages there under NH Liquor Commission License 1235803 and is licensed to serve food under a Food Service License issued by the Health Division of the Town of Salem Community Development Department.

11.    The defendant, DOUBLE 9, is a foreign limited liability company registered to do business in the State of New Hampshire with its principal office address at c/o US Realty Advisors, LLC, 1370 Avenue of the Americas, New York, New York 10019 and its Registered Agent in New Hampshire at Corporation Service Company, 10 Ferry Street, S313, Concord, NH 03301.

12.    By Quitclaim Deed [recorded on January 3, 2002 in the Rockingham County Registry of Deeds at Book 3703, Page 0173] DOUBLE 9 acquired an "Estate for Years" effective through January 31, 2022 in the real property located at 149-151 South Broadway, including the restaurant building and the fee title in the improvements and fixtures therein.

13.    The defendant, 99 REMAINDER, is a foreign limited liability company registered to do business in the State of New Hampshire with its principal office address at 3333 New Hyde Park Road, Suite 100, New Hyde Park, NY, 11042 and its Registered Agent in New Hampshire at CT

Corporation System, 9 Capitol St Concord, NH 03301.

14. By Quitclaim Deed [recorded on January 3, 2002 in the Rockingham County Registry of Deeds at Book 3703, Page 0173] 99 REMAINDER acquired a remainder interest in DOUBLE 9's "Estate for Years" effective through January 31, 2022, except for the restaurant building and the fee title in the improvements and fixtures therein.

15. The defendants' real property at 149-151 South Broadway is approximately .389 acres situated in the northwest corner of an 11-acre shopping plaza as partially depicted in **Figure 1** below.


**Fig. 1**

16. The entire shopping plaza site consists of approximately 1,000 customer parking spaces.

17. According to Plan of Land D-10779 [recorded in the Rockingham County Registry of Deeds], the steak house originally located in the building that is currently occupied by 99 Restaurant & Pub had 60 parking spaces.

18. The relevant portion of said Plan of Land D-10779 appears in **Figure 2** below.



**Fig. 2**

19. Although the Plan states "60 car parking for Bonanza," (as depicted above) the Quitclaim Deeds conveyed to the defendants included a parking easement (by way of Covenants separately recorded in the Rockingham County Registry of Deeds at Book 2292, Page 0946) whereby the patrons and visitors of any tenant within the plaza would be permitted to park anywhere that parking is permitted on the site.

20. The Covenants referred to in the preceding paragraph also require DOUBLE 9 and/or 99 REMAINDER to maintain the parking areas conveyed by the Quitclaim Deeds.

21. The 99 RESTAURANT offers its guests seating in the form of booths, high top tables, and bar stools and is licensed by the Health Division to accommodate a maximum of 240 guests.

22. On information and belief, the number of parking spaces simultaneously occupied by guests of the defendants' restaurant exceeds 60 on a daily basis and, given the restaurant's seating capacity of 240, the number of parking spaces occupied simultaneously during peak hours between 2:30 and 11:30 p.m. exceeds 100 seven days per week, especially during TV broadcasts of popular sporting events when patrons commonly wait 15 minutes or more to be seated depending on the number of guests in their party.

23. The overall number of parking spaces used by patrons of the defendants' restaurant is a

relevant factor in determining the number of accessible parking spaces that the defendants must provide under ADA Standard 208.2 which states, "Where more than one parking facility is provided on a site, the number of accessible spaces provided on the site shall be calculated according to the number of spaces required for each parking facility."

24.     In a parking facility such as the defendants', which requires 100 to 150 spaces, the minimum number of required accessible parking spaces is five, at least one of which must be van accessible. *Standard 208.2*

25.     "Public accommodation means a private entity that owns, leases (or leases to), or operates a place of public accommodation." 28 C.F.R. Part 36 § 36.104.

26.     99 RESTAURANT owns and operates a place of public accommodation within the meaning of the ADA.

27.     DOUBLE 9 owns a place of public accommodation within the meaning of the ADA.

28.     99 REMAINDER owns a place of public accommodation within the meaning of the ADA.

## SYNOPSIS OF A CAUSE OF ACTION UNDER THE ADA

29.     Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals. In studying the need for such legislation, Congress found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." *42 U.S.C. § 12101(a)(2)*

30.     Congress found that the many forms such discrimination takes include "outright intentional exclusion" as well as the "failure to make modifications to existing facilities and practices." *42 U.S.C. § 12101(a)(5)*

31. After thoroughly investigating the problem, Congress concluded that there was a "compelling need" for a "clear and comprehensive national mandate" to eliminate discrimination against disabled individuals and to integrate them "into the economic and social mainstream of American life." *S. Rep. No. 101-116, p. 20 (1989); H. R. Rep. No. 101-485, pt. 2, p. 50 (1990).*

32. Title III proscribes disability-based discrimination that prevents "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." *42 U.S.C. § 12182(a)*

33. To make a prima facie case under Title III of the ADA, a plaintiff must prove that (1) he has a disability, (2) defendants' facility is a place of public accommodation, (3) and he was denied full and equal treatment because of his disability.

34. The ADA's public accommodations provisions also permit an individual to allege discrimination based on a reasonable belief that discrimination is about to occur.

35. A plaintiff with a disability need not engage in the "futile gesture" of attempting to gain access to each and every feature of a facility or place of public accommodation where access barriers are known to exist and where the owner or operator does not intend to comply with the provisions of the ADA. *42 U.S.C. § 12188(a)(1)*

36. The entire interior and exterior spaces of the public accommodation owned and operated by the defendants must be in compliance with the ADA and the 2010 ADA Standards, but they are not.

37. The defendants own and operate a "restaurant," which is a public accommodation as defined in Title III of the ADA, 42 U.S.C. § 12181(7)(B), and its implementing regulation at 28 C.F.R. § 36.104.

7

**JURISDICTION AND VENUE**

38. The Court has primary jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and § 1343 in that this action arises under the laws of the United States and the defendants are subject to personal jurisdiction.

39. Venue is proper in this Court under 28 U.S.C. § 1391, the claim having arisen in the State of New Hampshire.

**COUNT I - VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

40. On April 10, 2018, Mr. Theodore accompanied his son and daughter to the 99 Restaurant & Pub.

**A.    PARKING**

41. Mr. Theodore observed three parking spaces near the main entrance that were marked as accessible with above ground signage and ground markings; none of the spaces were in fact accessible because none met the requirements of ADA Standard 208 (Parking Spaces), 216 (Signs) and 502 (Parking Spaces).

42. All three parking spaces designated as accessible appear in **Figure 2** below.



**Fig. 2**

30. All three parking spaces were occupied when Mr. Theodore arrived at the site on April 10, 2018.

31. Mr. Theodore had to park in the closest open space he could find, which was approximately 100 feet from the entrance in the row closest to South Broadway.

32. Mr. Theodore drove his car partially into the space at an angle and stopped. Because the space had no access aisle, his son and daughter got out of the car, took Mr. Theodore's wheelchair out of the back seat, assembled it, and situated it near him at the driver's door.

33. Mr. Theodore transferred into his wheelchair. His son then got behind the wheel and drove the car fully into the parking space. Upon departure, Mr. Theodore's transfer from his wheelchair back into the driver's seat followed the same sequence in reverse.

34. The two supposedly accessible spaces directly in front of the restaurant appear in a different perspective at **Figure 3** below.



**Fig. 3**

35. On information and belief, **Figure 3** is a more recent photo than **Figure 2** as evidenced by the patch of hot top within the parking space as shown in the lower left quadrant of **Figure 3**.

36. On information and belief, the hot top patch filled a depression within the parking space where a puddle previously would form under wet weather conditions as shown in **Figure 2** above.

37. On information and belief, the parking space with the patched surface in **Figure 3** is wider than the other two supposedly accessible spaces.

38. Under Standard 208.2.4 at least one accessible parking space must have the dimensions required of a van parking space.

39. Standard 502.2 provides that car parking spaces must be at least 96 inches wide, that van parking spaces must be at least 132 inches wide, and that each type of space must have at least a 60-inch wide access aisle (pursuant to ADA Standard 502.3.1), except that a van parking space may be 96 inches wide minimum where the adjoining access aisle is also 96 inches wide minimum.

40. Although the defendants may have intended the wider space of the three to serve as a van parking space, neither that space nor the other two meet the requirements of ADA Standards 502.2 and 502.3.1.

41. The access aisle between the two spaces shown in **Figure 3** is narrower than the required minimum width of 60 inches. *ADA Standard 502.2*

42. Under ADA Standard 502.4, the ground surfaces of parking spaces and access aisles serving them must be "stable, firm, and slip resistant" in accordance with ADA Standard 302.

43. The ground surface of the wider parking space shown in **Figure 2** and **Figure 3** is not "firm" within the meaning of ADA Standard 302 because it is deformed and indented by wear and tear and by the hot top patch and the concrete sidewalk within the borders of the marked space. *Advisory 302.1*

44. Under ADA Standard 502.4, changes in level within a parking space are not permitted (except that slopes not steeper than 1:48 are permitted to allow sufficient slope for drainage).

45. On information and belief, the slope of the ground surface shown in **Figure 2** and **Figure**

**3** exceeds the 1:48 slope permitted under ADA Standard 502.4.

46. Similarly, the asphalt surface of the parking space and access aisle depicted in **Figure 4** below is cracked and rutted, and is not "firm" within the meaning of ADA Standard 302.



**Fig. 4**

48. On information and belief, the slope of the third parking space and its access aisle (as depicted in **Figure 4** above) exceeds the 1:48 slope permitted under ADA Standard 502.4.

49. Parking facilities that require more than 100 spaces, such as the defendants' parking facility, must have a minimum of five accessible parking spaces (at least one of which must be a van parking space) within the shortest accessible route to the accessible entryway. *ADA Standards 208.2 and 208.3.1*

50. The restaurant's parking facility has only three parking spaces marked as accessible, but, as stated above, none meet the ADA Standards for accessibility. Those three spaces are closest to the main entrance, as the ADA requires, but the defendants have reserved the next closest parking spaces, for customers who will drive up and leave immediately after picking up a take-

11

out order. To comply with the ADA, the defendants should re-purpose the take-out parking spaces and thereby expand the quantity of accessible parking spaces within their parking facility.

51. The defendants must provide at least five ADA-compliant parking spaces given the restaurant's seating capacity, its high daily volume of guests at peak times, and the number of spaces *required* by their parking facility.

52. Contrary to Standards 502.3.3 and 502.6, the paint marking all three supposedly accessible spaces is faded and none have the above ground signage required of a van parking space.

53. The defendants have failed to meet Standard 216.5 and 502.6, which require accessible parking spaces to have signage at the head of the space 60 inches from the ground bearing the International Symbol of Disability and which also require a van parking space to have signage designating it as "Van Accessible."

**B. SEATING**

54. Once inside the restaurant, the host seated Mr. Theodore and his children at a half booth against a wall in the back of the restaurant near the kitchen. As one enters the dining area, this half booth is on the right side of the room.

55. On one side of the table was a fixed bench seat where Mr. Theodore's children sat. On the other, there were two unfixed chairs. Mr. Theodore positioned his wheelchair in place of one of the chairs. On information and belief, the only other such seating within the restaurant was on the same side of the dining room, but at the front end.

56. A fixed single column leg with a protruding X-shaped base supported the dining surface.

57. Mr. Theodore was unable to roll his wheelchair completely under the dining surface because the X-shaped base caused insufficient "toe clearance," *Standard 306.2*, which impeded

his wheelchair.

58. When his food order arrived, Mr. Theodore could not move forward to close the gap between his torso and the table; he had to lift the plate and hold it under his face to eliminate the possibility of accidentally spilling food onto his lap. This was uncomfortable and embarrassing for him to have to do in a crowded restaurant, which would have been avoidable but for the defendants' non-compliance with Title III of the ADA.

59. The defendants' restaurant does not meet Standard 226.1, which provides that where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces must be accessible, *Standard 902.2 and Standard 306.2.3*, which means that at least 12 of the 240 seating spaces in the defendants' restaurant must be wheelchair accessible spaces distributed proportionally throughout the dining area *and* the bar area with the same sight lines to the restaurant's many flat screen televisions and equal access to restroom facilities.

**C.     PATH OF TRAVEL**

60. Contrary to Standard 206.2.4, the defendants' public accommodation lacks at least one accessible route that connects all accessible building or facility entrances with all accessible spaces and elements within the building.

61. Mr. Theodore needed to use the restroom and for that reason traveled in a U-shaped path from his table to the front of the dining room, to his right around the bar, to his right again along an aisle with booths and high top tables on both sides, to the back of the dining area, and into a narrow corridor that lead to the men's room where the floor had an upgrade with an abrupt rise in the floor approximately three feet before the men's room door, which was on the right.

62. Along the U-shaped route that he took to the men's room, Mr. Theodore had to negotiate vertical changes in floor level caused by the presence of transition strips between fixed carpet

surfaces and tile surfaces, which, on information and belief, also exceeded the maximum permissible height of one-quarter inch. *Standard 303.2* These transition strips pose a wheelchair-tipping hazard. Mr. Theodore, in fact, had a close call with tipping backwards on one transition strip.

64. On information and belief, the slope of the corridor leading to the men's room is steeper than 1:20 contrary to Standard 403.3, its clear width is less than the 36" minimum allowed by Standard 403.5.1, and the unexpected rise in the floor exceeded the maximum permissible height of one-quarter inch under Standard 303.2.

65. Contrary to Standard 404.2, there is insufficient maneuvering clearance in the floor space in front of the men's room door; the available turning space in that location does not comply with Standards 304.3.1 or 304.3.2.

**D.   RESTROOM**

66. The drainpipe under the sink in the men's is not insulated or otherwise configured to protect against contact as required by Standard 606.5.

67. A waste receptacle obstructs the clear floor space available for a forward approach to the sink contrary to Standard 606.2.

**E.   GENERAL ALLEGATIONS**

68. Mr. Theodore intends to visit the defendants' place of public accommodation in the future in order to access the goods, services, and accommodations commonly offered there, but he will be unable to do so because of his disability, the physical barriers to access, which preclude and/or severely limit his access to the place and/or to the goods, services, facilities, privileges, advantages and/or accommodations offered at the defendants' restaurant.

69. The defendants have discriminated against the plaintiffs and others with disabilities, by

denying them access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of their restaurant, as prohibited by 42 U.S.C. § 12182, *et seq.*, and will continue to discriminate against the plaintiffs and others with disabilities unless and until they are compelled to remove all physical barriers that exist at their facility, including those specifically set forth herein, or at minimum, afford equivalent goods and services to persons with disabilities.

70. This *Complaint* provides a specific, although not exclusive, list of unlawful physical barriers, dangerous conditions and ADA violations which preclude and/or limit Mr. Theodore's ability (because of his disability) to access the defendants' restaurant, and/or experience the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations offered there; the plaintiffs nonetheless require an inspection in order to identify all of the architectural barriers that violate the ADA and reserve the right to amend their Complaint accordingly.

71. Mr. Theodore has suffered an injury in fact as a result of the defendants' non-compliance with the ADA. His expectation to visit the defendants' restaurant in the future creates a real and immediate threat of future harm.

72. The defendants have failed to adopt adequate non-discrimination policies or have failed to modify their policies to accommodate disabled persons.

73. The defendants have failed to take those steps that may be necessary to ensure that individuals with disabilities are not excluded, denied services, segregated or otherwise treated differently than other individuals.

74. The defendants have denied persons with disabilities, such as Mr. Theodore, an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages,

or accommodations that are equal to that afforded to non-disabled patrons of the defendants' restaurant.

75.     The defendants have failed to implement a plan for removing architectural barriers to wheelchair access.

76.     With respect to altered facilities under the ADA, discrimination constitutes "a failure to make alterations in such manner that, to maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." *42 U.S.C. § 12183(a)(2)*

77.     On information and belief, the defendants' restaurant has undergone extensive renovations, such that including accessible features was mandatory, but the defendants did not include accessibility features in the renovations.

78.     If the defendants' restaurant, or parts of it, never had been altered within the meaning of the ADA, the defendants would be required nonetheless to remove architectural barriers to wheelchair access to the extent that such modifications would be "readily achievable."

79.     Under 42 USC § 12181(9) the term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense."

80.     The "readily achievable" requirement is based on the size and resources of the entity. Larger places of public accommodation are expected to take a more active role in removing barriers than less substantial places of public accommodation.

81.     Barrier removal is an ongoing obligation.  A place of public accommodation is expected to remove barriers as resources become available.

82. Despite having available resources, the defendants have not engaged in barrier removal at their restaurant on an ongoing basis in accordance with the Americans with Disabilities Act and Subpart E of 28 C.F.R. Part 36.

83. The actions and initiatives that the defendants have failed to undertake in order to make their restaurant accessible to persons with disabilities are actions and initiatives that would be readily achievable, required by law, and would greatly assist persons with mobility disabilities at minimal expense to the defendants.

84. The defendants' conduct constitutes ongoing and continuous violations of the ADA and, unless restrained from doing so, the defendants will continue to violate the ADA. Said conduct, unless enjoined, will continue to inflict injuries for which the plaintiffs have no adequate remedy at law.

85. The injunctive relief requested herein will redress the plaintiffs' injury.

WHEREFORE, the plaintiffs respectfully request a permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504 requiring the defendants to alter The 99 Restaurant & Pub located at 149-151 South Broadway, Salem and to amend their policies and procedures vis-à-vis disabled patrons and visitors in order to render their restaurant readily accessible to and useable by individuals with disabilities on an equal basis with non-disabled persons to the extent required by the Americans with Disabilities Act and Subpart E of 28 C.F.R. Part 36, and to require alternatives to barrier removal via the provision of equal service and hours of operation to the extent required by Subpart C of 28 C.F.R. Part 36; the plaintiffs further request an award of appropriate attorneys' fees and costs of this suit as provided by 42 U.S.C. § 12205.

    Respectfully submitted,
    The Plaintiffs, DINO THEODORE, et al.,

    By their Attorneys,

|  |  |
|---|---|
|  | /s/Nicholas S. Guerrera |
|  | Nicholas S. Guerrera, NH BAR ID 6520 |
|  | Shaheen, Guerrera & O'Leary, LLC |
|  | Jefferson Office Park |
|  | 820A Turnpike Street |
|  | North Andover, MA 01845 |
|  | (978) 689-0800 |
| Dated: 5/3/2018 | nguerrera@sgolawoffice.com |